# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

LARRY GENE HAMRICK

      Petitioner,

v.                                      Case No. 3:17-cv-704-J-32PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

## I.   Status

Petitioner, an inmate of the Florida penal system, initiated this case by filing a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254. Doc. 1; Petition. He is challenging a state court (Duval County, Florida) judgment of conviction for robbery. Id. at 1. He is currently serving a thirty-year term of incarceration as a habitual felony offender, with a fifteen-year minimum mandatory term as a prison releasee reoffender. Id. at 7. Respondents have responded. See Doc. 14; Response.[1] Petitioner declined to file a reply, and

---

[1] Attached to the Response are numerous exhibits. See Doc. 14-1 through Doc. 14-4. The Court cites to the exhibits as "Resp. Ex."

instead notified the Court that he intends to rely on the allegations as alleged in his Petition. <u>See</u> Doc. 16. This case is ripe for review.

## II.   <u>Governing Legal Principles</u>

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the

2

> presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than

> mere error or even clear error. <u>See, e.g.</u>, <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18 (2003); <u>Lockyer</u>, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th

4

Cir. 2010).  Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105.  As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans v. Sec'y, Dep't</u>

of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.   Analysis

### A. Ground One

Petitioner argues that his trial attorney was ineffective for failing to impeach the victim, Nicholas Israel's, trial testimony with statements Israel made during his deposition and in his written statement to police. Doc. 1 at 9. Petitioner highlights four allegedly inconsistent prior statements that trial counsel should have used to discredit Israel's version of events. Id. at 10-11. Petitioner raised an identical claim in his Rule 3.850 motion. Resp. Ex. H at 18-23. The postconviction court summarily denied the claim, finding in pertinent part:

> In the first claim of the instant Motion, Defendant raises four subclaims, each alleging counsel was ineffective for failing to impeach State witness and victim Nicholas Israel for prior inconsistent statements. In each subclaim, Defendant contends counsel's failure to impeach undermined confidence in the outcome of his case.
>
> SUBCLAIM ONE
>
> In his first subclaim, Defendant argues counsel should have impeached Nicholas Israel when he testified at trial, on direct-examination, that it was dark at the scene of the robbery and, on cross-examination, it was not well-lit and relatively dark. Defendant alleges Mr. Israel testified during his deposition that the location was "pretty lit up." (Def.'s

6

Mot. at 3, 5.) Defendant asserts counsel should have impeached Mr. Israel for lying at trial about the degree of light at the scene of the crime.

Initially, this Court notes Defendant fails to attach as an exhibit the transcript from the deposition to which he cites, and the transcript is not in the court records. Regardless, it is clear, from what does exist in the record, defense counsel did impeach Mr. Israel during his effective cross-examination. (Ex. B at 36-54.) First, on direct-examination, Mr. Israel did testify the location was dark. (Ex. B at 36.) On cross-examination, Mr. Israel testified that it was 1:00 in the morning, that it was dark outside, and that it was not well-lit. (Ex. B at 48.) Taking as true Defendant's allegation that Mr. Israel did testify during his deposition that the location was "pretty lit up," this Court notes that phrase is open to interpretation and does not necessarily contradict his trial testimony. Nonetheless, counsel did successfully impeach Mr. Israel for other prior inconsistent statements (duration of robbery, suspects' descriptions) given at his deposition and in his written statement to police, and Mr. Israel testified that his sworn deposition testimony was not accurate. (Ex. B. at 49-54.) Mr. Israel also testified on cross-examination that he was drunk at the time of the incident and that his memory of the incident is a little hazy. (Ex. B at 47-50.) When counsel asked if his memory is hazy due to excessive drinking, Mr. Israel responded it could have been a result of the head trauma he suffered during the robbery when he blacked-out and hit his head on the concrete. (Ex. B at 49-51.) Assuming <u>arguendo</u> that counsel did err by failing to impeach Mr. Israel based on the level of light at the crime scene, which this Court does not hold, Defendant has failed to show prejudice. Mr. Israel was effectively impeached before the jury, which convicted Defendant despite the prior inconsistent statements. Lastly, counsel argued during his closing that Mr. Israel's trial testimony was not credible because of his level of intoxication at the time of the robbery. (Ex. B at 152-167.) It is unreasonable

that, had counsel also impeached Mr. Israel as to the level of light at the scene of the crime, the outcome of the proceeding would have been different. Accordingly, Defendant's first subclaim is denied.

## SUBCLAIM TWO

In his second subclaim, Defendant argues counsel should have impeached Mr. Israel when he testified at trial, on cross-examination, that he was not 100-percent sure which of the two men involved in the robbery touched him first or which one put him in a chokehold. Defendant alleges Mr. Israel testified during his deposition that he was ninety-percent sure Defendant strangled him.

This Court finds the statements are not inconsistent. Assuming arguendo Mr. Israel did so testify during his deposition, as Defendant states, there would be no basis on which to impeach Mr. Israel for an inconsistent statement. Trial counsel is not ineffective for failing to raise a nonmeritorious issue. Lugo v. State, 2 So. 3d 1, 21 (Fla. 2008); Parker v. State, 611 So. 2d 1224, 1227 (Fla. 1992). Accordingly, Defendant's second subclaim is denied. Out of an abundance of caution, this Court also denies Defendant's second subclaim under the reasoning set forth in this Court's denial of his first subclaim.

## SUBCLAIM THREE

In his third subclaim, Defendant contends counsel should have impeached Mr. Israel when he testified at trial that the duration of the encounter was several minutes when, during his deposition, Mr. Israel testified that the encounter took only five-to-six seconds.

This Court denies Defendant's third subclaim under the reasoning set forth in this Court's denial of Defendant's first subclaim.

## SUBCLAIM FOUR

In his third [sic] subclaim, Defendant contends counsel should have impeached Mr. Israel for inconsistent statements, between his trial testimony, deposition testimony, and written statement to police regarding the descriptions of the two attackers. Defendant argues Mr. Israel's direct-examination testimony, describing the clothing of the two attackers, contradicts his cross-examination testimony that the only identification he provided to police in his written statement was that the two robbers were black males. Defendant asserts these statements also conflict with Mr. Israel's re-direct testimony that he provided a more thorough description of the robbers in his deposition testimony.

This Court notes the inconsistencies alleged in his argument are the direct result of his counsel's effective impeachment of the witness for the very reasons Defendant now alleges he should have used. (Ex. B at 31-56.) Defendant's claim is without merit. Trial counsel is not ineffective for failing to raise a nonmeritorious issue. <u>Lugo</u>, 2 So. 3d at 21; <u>Parker</u>, 611 So. 2d at 1227. Accordingly, Defendant's fourth subclaim[] is denied. Out of an abundance of caution, this Court also denies Defendant's fourth subclaim under the reasoning set forth in this Court's denial of Defendant's first subclaim.

Resp. Ex. H at 53-56. Petitioner appealed the postconviction court's denial. Resp. Ex. I. The First District Court of Appeal per curiam affirmed the postconviction court's summary denial without a written opinion. Resp. Ex. K. To the extent that the First DCA affirmed the postconviction court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

9

To add context to this claim, the Court briefly summarizes relevant testimony presented at trial. During his direct-examination, Israel testified that on the night of the robbery, he and some friends had gone to a bar to see a concert. Resp. Ex. B at 33-34. When Israel's friends unintentionally left him at the bar, Israel walked outside to phone a ride. <u>Id.</u> at 34-35. He testified that while he was waiting to be picked up, two black males approached him and asked him for a cigarette. <u>Id.</u> at 36-37. He testified that the lighting in the area was dark, but he was able to describe the height and clothing of the two individuals who approached him and explained that one of the individuals was wearing a black shirt and long red shorts. <u>Id.</u> at 37. He stated that while he was reaching down to get a cigarette, he felt someone grab his neck and begin strangling him. <u>Id.</u> at 39-40.  As he was being strangled, he also felt someone grabbing his legs. <u>Id.</u> at 39. He lost consciousness for a brief moment but woke up just in time to see the individual in the black shirt and red shorts running away, but still within a half of a block. <u>Id.</u> at 40. When asked how long the incident lasted, he testified "[o]ver minutes, I think." <u>Id.</u> at 40-41. He identified Petitioner as one of the two black males, and explained that Petitioner was the individual wearing the black shirt and red shorts the night of the incident. <u>Id.</u> at 39-40.

He also testified that when he regained consciousness, eyewitness Cecil Kendall ran to Israel to see if he was alright. <u>Id.</u> at 41-42. Israel and Kendall

then began chasing the assailant in the black shirt and red shorts (Petitioner) as Kendall called 911 and described the assailants to the police dispatcher. <u>Id.</u> at 42. Police were nearby and soon after the 911 call, police apprehended Petitioner who was still wearing the black shirt and red shorts. <u>Id.</u> at 42-43. Following his arrest, Petitioner was read his <u>Miranda</u>[2] rights and questioned by police. <u>Id.</u> at 109-14. During his police interview, which was played for the jury at trial, Petitioner stated that prior to the incident, Israel had stopped Petitioner and another individual named "Jit" in the street and asked if they could help Petitioner purchase drugs. <u>Id.</u> at 112-13. Petitioner explained that he then saw Israel reach down and pull out cash from his wallet. <u>Id.</u> at 111-12. Petitioner told police that after he saw Israel's cash, Petitioner turned around to urinate. <u>Id.</u> at 112-13. Petitioner explained that he then turned around to find Jit choking Israel before slamming Israel on the ground and running away with his wallet.[3] <u>Id.</u> at 112-13.

Petitioner argues that trial counsel should have elicited prior inconsistent statements from Israel regarding the area being "well-lit," that he was 90-percent sure Petitioner was the individual who choked him, that the attack lasted only five-to-six seconds, and that Israel did not provide a description of

---

[2] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[3] Police were not able to identify or locate "Jit." Resp. Ex. B at 114.

the attacker's clothing to police on the night of the incident. Doc. 1 at 10-11. However, on cross-examination, trial counsel attempted to discredit Israel's trial testimony by questioning him about his level of intoxication at the time of the crime, and by eliciting testimony that he was hit on his head and lost consciousness, the area of the attack was not well lit, he could not identify who attacked him, and his memory of the incident was "a little hazy." Id. at 48-52. Further, contrary to Petitioner's current allegation, trial counsel did question Israel about his inconsistent deposition testimony, in which he stated that the encounter took five-to-six seconds. Id. at 50. And trial counsel used Israel's prior written statement to police to highlight that Israel did not give police, on the night of the robbery, a description of the assailants' clothing or physical features. Id. at 52-53. He also elicited testimony that Israel and Kendall were placed in the same interview room during police questioning, and Israel admitted that Kendall did not actually see the entire robbery take place. Id. However, during, re-direct, Israel acknowledged that during his prior deposition testimony, he did testify that one of the assailants was wearing "[a] black shirt with – [ ] a shiny print on the front of it and long red shorts." Id. at 55.

Trial counsel's obvious efforts to impeach and discredit Israel's trial testimony were not deficient. Also, considering Petitioner's admissions made during his police interrogation, Petitioner cannot demonstrate that but for

counsel's failure to cross-examine Israel regarding the assailants' clothing or the lighting, the outcome of the trial would have been different. Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claims is neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground One is denied.

**B. Ground Two**

Petitioner argues that trial counsel was ineffective for failing to file a motion to suppress Israel's and Kendall's in-court and out-of-court identifications of Petitioner as one of the assailants. Doc. 1 at 13-15. He claims that the out-of-court identifications were inherently incredible, because neither witness described the assailants in their written statements to police; police did not verify their identifications using a photo lineup; Israel was heavily intoxicated at the time of the offense; the area of the robbery was very poorly lit and Israel lost consciousness; Israel did not personally view the men; Kendall described the assailant as wearing an orange shirt and blue shorts; Kendall lost eye contact of the fleeing assailant when he stopped to help Israel; and Petitioner approached Israel after the attack and asked if he needed help. <u>Id.</u> He claims that the in-court identification of Petitioner should have been suppressed because it "was extremely prejudicial and erroneous, and the

outcome of his trial would have been different without such in-court identification." Id. at 15.

Petitioner raised a similar claim in his Rule 3.850 motion.[4] Resp. Ex. H at 24-31. The postconviction court summarily denied the claim as follows:

> In Defendant's second claim, Defendant contends counsel was ineffective for failing to file a motion to suppress evidence that identified Defendant as one of the two assailants in the robbery. Specifically, Defendant argues a motion to suppress would have been meritorious because his out-of-court identifications did not involve "often standard police procedures" including a line-up, show-up, or photo spread. (Def.'s Mot. at 10.) Defendant also alleges counsel should have filed the motion to suppress because various witnesses provided inconsistent clothing descriptions and there was no detailed description of the assailants' clothing shortly after the robbery. Defendant alleges, but for counsel's failure to file the motion to suppress, the result of the trial would have been different.

> SUBCLAIM ONE

> This Court construes Defendant's claim as two subclaims. In Defendant's first subclaim, he argues counsel should have filed a motion to suppress because the police did not employ the use of a line-up, a show-up, or photo spread.

---

[4] In his Rule 3.850 motion, Petitioner did not challenge Israel and Kendall's in-court identifications. Resp. Ex. B at 24-31. Because Respondents do not argue that Petitioner failed to exhaust that subclaim, the Court assumes Respondents have waived any exhaustion defense. Nevertheless, as explained in the Court's analysis of this Ground, any challenge to Israel and Kendall's in-court identifications would have been meritless.

Mr. Israel testified that, once he regained consciousness, he and another witness ran after one of the suspects and that he flagged down a police officer and drove with her until he saw the man he had been chasing. (Ex. B at 41-43.) At trial, Mr. Israel identified that person as Defendant. (Ex. B at 40.) Officer Pomeroy testified as to how she drove Mr. Israel around in her cruiser, having Mr. Israel look at two people walking on the street as she drove by. (Ex. B at 91-92.) She testified that Mr. Israel identified the second person shown to him as one of the assailants because he was wearing the exact description of clothing given by a different witness. (Ex. B at 91.) Officer Pomeroy testified that the suspect was walking briskly and was breathing heavily as though he had been running. (Ex. B at 92-93.) At trial, Officer Pomeroy identified that person as Defendant. (Ex. B at 93-94.) Defendant has failed to show that his out-of-court identification was obtained by unnecessarily suggestive police procedures. Had counsel moved to suppress, that motion would have been denied. Counsel cannot be ineffective for failing to file a motion which would have been properly denied. Branch v. State, 952 So. 2d 470, 476 (Fla. 2006).

Furthermore, "[w]here an evidentiary hearing has not been held, a movant's allegations in a motion for postconviction relief must be accepted as true except to the extent that the allegations are conclusively rebutted by the record." Murphy v. State, 638 So.2d 975, 976 (Fla. 1st DCA 1994) (citing Harich v. State, 484 So. 2d 1239 (Fla. 1986)). Defendant admits in his motion that counsel advised Defendant he would not file a motion to suppress because there were no grounds to support suppression and that he thought he could win the case at trial without filing a motion to suppress. (Def.'s Mot. at 9.) Accepting the allegations as true, this Court finds counsel's decision to be based on reasonable trial strategy. Generally, an evidentiary hearing is required to determine whether counsel's action or inaction was a strategic decision. Hamilton v. State,

979 So. 2d 420, 422 (Fla. 2d DCA 2008) (citations omitted). However, when it is obvious from the record that counsel's decision was strategic, an evidentiary hearing is not required. Id. Here, Defendant admits counsel's decision was strategic. Accordingly, Defendant's first subclaim is denied.

### SUBCLAIM TWO

In Defendant's second subclaim, he contends counsel should have filed the motion to suppress due to inconsistent clothing descriptions and the lack of a detailed description of the assailants' clothing shortly after the robbery.

To the extent the Defendant appears to be attempting to challenge the sufficiency of the evidence against him, the Defendant may not challenge the admissibility, validity, or sufficiency of the evidence against him in a motion seeking postconviction relief. Betts v. State, 792 So. 2d 589, 590 (Fla. 1st DCA 2001); Jackson v. State, 640 So. 2d 1173, 1174 (Fla. 2d DCA 1994). Defendant may not seek to avoid this procedural bar by couching his allegations in terms of ineffective assistance of counsel. See Arbelaez v. State, 775 So. 2d 909 (Fla. 2000); Cherry v. State, 659 So. 2d 1069 (Fla. 1995); Chandler v. State, 634 So. 2d 1066 (Fla. 1994); Lopez v. Singletary, 634 So. 2d 1054 (Fla. 1994); Torres-Arboleda v. Dugger, 636 So. 2d 1321 (Fla. 1994); Swafford v. State, 569 So. 2d 1264 (Fla. 1990); Medina v. State, 573 So. 2d 293 (Fla. 1990). Accordingly, Defendant's second subclaim is denied.

Resp. Ex. H at 52-57-59. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. K. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim

16

in accordance with the deferential standard for federal court review of state court adjudications.

To add context to this claim, the Court briefly summarizes Kendall's trial testimony. Kendall testified that he was walking in the downtown area when he heard screams. Resp. Ex. B at 60-61. He looked around and saw, from about forty yards away, two black males attacking a white male. <u>Id.</u> at 61. According to Kendall, both assailants were touching Israel and sticking "their hands in his pockets, digging in his pockets." <u>Id.</u> at 83. He testified that one of the males was wearing blue jean shorts and a white shirt and the other assailant was wearing red shorts and a gray shirt. <u>Id.</u> at 62. Kendall explained that he began running toward the men while yelling for the assailants to stop. <u>Id.</u> At that time, the assailant in the blue jean shorts ran away, out of sight, while the assailant in the red shorts ran another direction. <u>Id.</u> at 62. After stopping to check on Israel, Kendall and Israel began pursuing the assailant in red shorts and during the pursuit, Kendall saw the individual in red shorts drop an object that was later identified as Petitioner's cell phone. <u>Id.</u> at 63. During the chase, Kendall used his own cell phone to call 911. <u>Id.</u> at 63-64.

The 911 call was played for the jury, during which Kendall describes the assailant as wearing "red shorts and black shirt . . . ." <u>Id.</u> at 66-68. As he is describing the assailant to the 911 dispatcher, it is clear that Kendall and Israel are looking at the assailant and tracking him while they provide the

description. Id. at 66-68. Kendall testified that Israel then flagged down a nearby police officer, and Israel and the officer drove around in the vicinity until they saw Petitioner again, and at that time, police apprehended him. Id. at 70. Kendall stated that on the night of Petitioner's arrest, he had an opportunity to view the individual in custody and recognized him to be the assailant that he saw attack Israel. Id. at 70. He also made an in-court identification of Petitioner as one of the individuals who participated in the robbery of Israel. Id. 70-71.

On cross-examination, trial counsel challenged Kendall's identification of Petitioner by noting that in his written statement to police, he originally described the assailant as wearing an orange shirt and blue shorts. Id. at 76. He also attempted to discredit Israel's identification by eliciting testimony from Kendall that when Israel regained conscious, Kendall pointed at Petitioner and exclaimed "there he is" before engaging in their pursuit. Id. at 78. Trial counsel also elicited testimony from Kendall that during their pursuit of Petitioner, Petitioner "voluntarily walked up to [Kendall] and Mr. Israel," and that "he wasn't fleeing," but walking. Id. at 79. However, it is unclear what Petitioner actually said to Israel and Kendall at that time. Id. Further, as detailed in Ground One above, on cross-examination of Israel, trial counsel attempted to challenge Israel's identification of Petitioner by questioning him about his level of intoxication at the time of the crime, that he hit his head and lost consciousness, that the area of the attack was not well lit, he could not identify

who attacked him, and elicited an admission that his memory was "a little hazy." Id. at 225-28.

Petitioner's argument that Kendall and Israel's identifications were unreliable and subject to suppression is without merit. Trial counsel is not deficient for failing to raise a meritless argument. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance"). Further, trial counsel painstakingly attempted to discredit Israel and Kendall's identifications by impeaching these witnesses with the evidence Petitioner now claims would have supported a motion to suppress. Despite such efforts, any challenge to Israel and Kendall's identifications would not have precluded the state from presenting to the jury Petitioner's police interrogation, in which he admitted that he was present during the robbery, although arguing he did not touch Israel. See Rep. Ex. B at 109-14. Thus, Petitioner fails to show that but for trial counsel's alleged deficiency, the outcome of his trial would have been different. Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claims was neither contrary to nor an unreasonable application of Strickland, and it is not based

on an unreasonable determination of the facts in light of the evidence presented to the state court.  <u>See</u> 28 U.S.C. § 2254(d).  Ground Two is denied.

### C. Ground Three

Petitioner argues that trial counsel was ineffective for failing to move for a mistrial and object to the state's <u>Giglio</u>[5] violation. Doc. 1 at 16-19. He asserts that during Kendall's pretrial written statement to police, he described the robber as wearing an orange shirt and blue shorts. <u>Id.</u> He claims that at trial, however, Kendall changed his testimony and testified that the robber was wearing red shorts and a black shirt – the exact outfit that Petitioner was wearing the night of the offense. <u>Id.</u> He argues that the state advised Kendall to change his testimony, so it would match the physical evidence supporting its theory that Petitioner was one of the robbers. <u>Id.</u>

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. H at 32-35. The postconviction court summarily denied the claim, finding in pertinent part:

> In his third claim, Defendant contends counsel was ineffective for failing to object to the State's <u>Giglio</u>[] violation. Defendant argues the State committed the violation when it knowingly presented the false testimony of witness Cecil Kendall. Defendant states the testimony was false because he made inconsistent statements on direct-, cross-, and redirect-examination. Defendant states Mr. Kendall, on direct-examination, testified the suspect wore red shorts and a gray shirt,

---

[5] <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

but on cross-examination, Mr. Kendall testified he reported to police, in his written statement, the suspect was wearing blue shorts and an orange shirt. Defendant points out Mr. Kendall, on redirect-examination, testified that he stated, during his deposition, the suspect was wearing red shorts and a gray shirt with a white headband around one of his arms. Defendant argues, because the State knew or should have known Defendant was arrested while wearing red shorts and black shirt, it knowingly presented false testimony at trial when Mr. Kendall testified the suspect wore red shorts and a gray shirt.

To establish a Giglio violation, a defendant must show: (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material. Guzman v. State, 868 So. 2d 498, 505 (Fla. 2003) (citing Ventura v. State, 794 So. 2d 553, 564-65 (Fla 2001)). Under the third prong of Giglio, when a prosecutor knowingly uses perjured testimony, or fails to correct what the prosecutor later learns is false testimony, the false evidence is material "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Guzman, 868 So. 2d at 506 (quoting United States v. Agurs, 427 U.S. 97, 103 (1976)). Stated differently, the false testimony is material unless the failure to disclose it is harmless beyond a reasonable doubt. Id. (quoting United Stated v. Bagley, 473 U.S. 667, 679-80 (1985)). It is the State's burden to prove harmless error beyond a reasonable doubt. Id.

Here, Defendant fails to prove Mr. Kendall's testimony was false or that the State knowingly presented false testimony. The record shows Mr. Kendall did testify, on direct-examination, that the suspect was wearing red shorts and a gray shirt. (Ex. B at 61-62.) On cross-examination, counsel impeached Mr. Kendall for his prior inconsistent written statement to police, which stated the suspect was wearing blue shorts and an orange shirt. (Ex. B at 76.)

Mr. Kendall testified he was distracted while writing his written statement. (Ex. B at 76-77.) Mr. Kendall testified, on redirect-examination, that he stated during his deposition the suspect was wearing red shorts, a gray shirt, and a white headband wrapped around one of his arms. (Ex. B at 85.) Thus, the record shows the State presented testimony consistent with Mr. Kendall's deposition testimony. Defendant has failed to show the State has committed a <u>Giglio</u> violation. Had counsel made an objection to such a violation, that objection would have been overruled. "[C]ounsel is not ineffective for failing to make a futile objection." <u>Willacy v. State</u>, 967 So. 2d 131, 140 (Fla. 2007) (citing <u>Maxwell v. Wainwright</u>, 490 So. 2d 927, 932 (Fla. 1986)). Accordingly, Defendant's claim is without merit.

Out of an abundance of caution, this Court further notes counsel did impeach Mr. Kendall, on cross-examination, for his prior inconsistent, written statement to police regarding the suspect's clothing. (Ex. B at 76-77.) The jury heard the testimony and inconsistent statements and nonetheless found Defendant guilty. Thus, there is no reasonable probability that the jury's verdict could have been affected. <u>See</u> <u>Walton v. State</u>, 3 So. 3d 1000, 101 (Fla. 2009) (affirming the trial court's denial of the <u>Giglio</u> claim where "there is no reasonable possibility that it could have affected the jury's verdict or recommendation of a death sentence."). Consequently, Defendant's third claim is denied.

Resp. Ex. H at 59-61. Petitioner appealed the postconviction court's denial, <u>see</u> Resp. Ex. I, and the First DCA per curiam affirmed the denial without a written opinion, <u>see</u> Resp. Ex. K. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

As the postconviction court noted, during cross-examination, trial counsel questioned Kendall about his written police statement, in which he described one of the robbers as wearing an orange shirt and blue shorts. Resp. Ex. B at 76. Kendall acknowledged the discrepancy between his written statement and his trial testimony that the assailant was wearing a grey shirt and red shorts; however, Kendall explained that he was distracted when he wrote the statement. Id. at 76. He clarified on re-direct that multiple people were talking to him as he was trying to write his description, so he "got the statement all mixed up." Id. at 84. However, in his deposition, Kendall testified that the robber was wearing red shorts and a grey shirt. Id. at 84-85.

Kendall's trial testimony regarding Petitioner's clothing did not amount to a Giglio violation, and thus, trial counsel was not deficient for failing to challenge it. Nevertheless, even assuming trial counsel was deficient, Petitioner admitted to police that he was present at the time of the robbery and was arrested while wearing red shorts and a black shirt. Id. at 111-14. Accordingly, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claims was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d).

## D. Ground Four

Petitioner argues that trial counsel was ineffective for failing to adequately move for a judgment of acquittal. Doc. 1 at 20-22. He asserts that trial counsel should have highlighted the following four insufficiencies when presenting his motion for judgment of acquittal: (1) there was no independent verification of which assailant robbed the victim; (2) the state did not present any of the stolen items as evidence; (3) stolen items were not found on Petitioner; and (4) the "shorter assailant" was originally described as wearing an orange shirt and blue shorts. Id.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. H at 35-39. The postconviction court denied the claim, finding in pertinent part:

> In his fourth claim, Defendant contends, but for counsel's failure to file an adequate motion for judgment of acquittal ("JOA"), the motion would have been granted and the result of the trial would have been different. In the alternative, Defendant argues, even if the trial court failed to grant the motion, his arguments would have been preserved for appellate review. Defendant contends counsel should have argued Mr. Israel and Mr. Kendall gave insufficient and contradictory identifications of the suspect, that the police failed to use procedures such as a lineup, show-up, and photo spread, and that the State presented insufficient evidence to sustain a conviction for robbery.
>
> The Florida Supreme Court has said the following in reference to motions for judgment of acquittal:

A defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. The courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. Where there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the Court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail and not primarily the views of the judge. The credibility and probative force of conflicting testimony should not be determined on a motion for judgment of acquittal.

Lynch v. State, 293 So. 2d 44 (Fla. 1974). This Court notes that counsel did move for judgment of acquittal and argued in detail that the State failed to present a prima facie case to support Defendant's conviction. (Ex. B at 126-27, 191.) There is no reasonable probability that, had counsel argued as the Defendant suggests, such a motion would have been granted and Defendant would have been acquitted. Defendant has failed to establish that he was prejudiced by the alleged errors of counsel. "Although in hindsight one can speculate that a different argument may have been more effective, counsel's argument does not fall to the level of deficient performance simply because it ultimately failed." Ferguson v. State, 593 So. 2d 508 (Fla. 1992). Therefore, his claim that counsel should have argued

that the State's evidence was insufficient is without merit.

Lastly, to the extent Defendant alleges prejudice by losing his right to appellate review, "failure to preserve issues for appeal does not show the necessary prejudice under Strickland." Strobridge v. State, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009). Prejudice must be assessed "based upon its effect on the results of the trial, not on its effect on appeal." Id. (citing Carratelli v. State, 961 So. 2d 312, 323 (Fla. 2007)). Nonetheless, Defendant's claims were in fact preserved for appeal, as counsel filed his motion for JOA, renewed it, and then filed a motion for new trial based on the trial court's denial of the motion for JOA. (Exs. B at 126, 191; E.) Consequently, Defendant's fourth claim is denied.

Resp. Ex. H at 61-63. Petitioner appealed the postconviction court's denial, see Resp. Ex. I, and the First DCA per curiam affirmed the denial without a written opinion, see Resp. Ex. K. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

Petitioner was charged with robbery as defined in section 812.13(2)(c), Florida Statutes. Resp. Ex. A at 125. Under § 812.13(2)(c), robbery is the "taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear"; and in the course of committing the robbery, the offender did not carry a weapon.  §

812.13(2)(c), Fla. Stat. At trial, the state presented evidence that Petitioner and another male encountered Israel on the street, and as Israel was reaching in his pocket, one of the two males choked Israel until he lost consciousness. Resp. Ex. B at 38-40. When he regained consciousness, Israel's wallet and phone were missing from his pockets. <u>Id.</u> at 41-42.

Kendall also witnessed the attack and identified Petitioner as one of the assailants. <u>Id.</u> at 61-70. Kendall testified that during the attack, he saw both assailants digging into Israel's pockets. <u>Id.</u> at 83. Kendall also testified that he saw Petitioner drop Israel's cell phone as he was running away from the scene. <u>Id.</u> at 63. Indeed, while he attempted to explain that he did not participate in the robbery, Petitioner admitted he was one of the two males who encountered Israel in the street, he witnessed the attack occur, and he was apprehended while wearing the same clothing as one of the assailants. <u>Id.</u> at 111-14.

Considering this record evidence, Petitioner fails to demonstrate that but for trial counsel's alleged failure to present a more articulate motion for judgment of acquittal, the outcome of his trial would have been different. Thus, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court.  <u>See</u> 28 U.S.C. § 2254(d).  Ground Four is denied.

Accordingly, it is **ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.      If Petitioner appeals this Order, the Court denies a certificate of appealability.   Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[6]

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of April, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

---

[6] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

Jax-7

C:    Larry G. Hamrick, #304160
       Jennifer J. Moore, Esq.